IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Hanaa A., ) | |
| ) | |
|     *Plaintiff*, ) | |
| ) | Case No. 3:21-cv-50043 |
| v. ) | |
| ) | Magistrate Judge Lisa A. Jensen |
| Kilolo Kijakazi, ) | |
| Acting Commissioner of Social Security,[1] ) | |
| ) | |
|     *Defendant*. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Hanaa A. brings this action under 42 U.S.C. § 405(g) seeking reversal or a remand of the decision denying her social security benefits.[2] For the reasons set forth below, the Commissioner's decision is affirmed.

**I. Background**

Plaintiff was born in Iraq, but she lived in Jordan prior to being admitted to the United States as a refugee in October 2011. R. 54, 339. She speaks and writes in Arabic but does not understand English. R. 62. She is married with four children who, at the time of the hearing were approximately 6, 16, 22, and 24 years old. R. 54. Her youngest child is autistic. R. 55.

Plaintiff submitted an application for supplemental security income on April 13, 2018, when she was 45 years old. Plaintiff alleged that she suffered from dizziness, stress, anxiety, chronic obstructive pulmonary disease ("COPD"), asthma, and knee problems with an alleged onset date of August 1, 2014. Her claims were initially denied on June 19, 2018, and upon

---

[1] Kilolo Kijakazi has been substituted for Andrew Marshall Saul. Fed. R. Civ. P. 25(d).
[2] The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings pursuant to 28 U.S.C. § 636(c).

reconsideration on October 3, 2018. Thereafter, she filed a written request for a hearing, and a hearing was held before an Administrative Law Judge ("ALJ") on June 30, 2020. At the hearing Plaintiff amended her alleged disability onset date from August 1, 2014 to the application date, April 12, 2018.

On July 14, 2020, the ALJ issued an unfavorable decision finding Plaintiff was not entitled to benefits. The ALJ found that Plaintiff had the following severe impairments: headaches; obesity; COPD/asthma; left knee sprain/ACL tear; hypertension; degenerative disc disease of the cervical spine/kyphosis/radiculopathy; depression; anxiety; and post-traumatic stress disorder ("PTSD"). The ALJ determined that Plaintiff's severe impairments did not meet or medically equal a listed impairment. The ALJ concluded Plaintiff had the residual functional capacity ("RFC") to perform sedentary work except she could never climb ladders/ropes/scaffolds; could occasionally climb ramps/stairs, stoop, crouch, crawl, kneel and balance; could have no exposure to bright, sharp focused lights as in welding or flashing pulsating lights; must avoid concentrated exposure to pulmonary irritants and extreme heat; must avoid concentrated exposure to hazards including dangerous, moving machinery and unprotected heights; could understand, remember, and carry out instructions for simple, routine, and repetitive tasks with sufficient persistence, concentration, or pace to timely and appropriately complete such tasks; could have no fast paced production rate or strict quota requirements; could have occasional contact with co-workers, supervisors, and the general public; could occasionally rotate her head but could rotate at the waist; and could frequently reach overhead bilaterally. The ALJ determined that Plaintiff had no past relevant work but that there were jobs that existed in significant numbers in the national economy that she could perform, including a touch up screener, bonder semiconductor, and final assembler eyewear.

Plaintiff requested review by the Appeals Council, which was denied on December 4, 2020. Plaintiff appealed the ALJ's decision to this Court on February 2, 2021.

## II. Standard of Review

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). "An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021) (citations omitted). The reviewing court may not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

## III. Discussion

Plaintiff argues that (1) the ALJ improperly relied on testimony from the psychological expert at the hearing; (2) the ALJ's analysis of the criteria for Listings 12.04, 12.06, and 12.15 is flawed; and (3) the ALJ inordinately relied on Plaintiff's care for her autistic child when evaluating her subjective complaints.[3]

---

[3] In her opening brief, Plaintiff makes several other arguments; however, Plaintiff abandons these arguments in her two-page reply brief. The Seventh Circuit has indicated that failure to respond to an argument in a response brief results in waiver. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010). Accordingly, the Court construes their omission as a waiver of those arguments and declines to address them. *See Whitcher v. Saul*, 20-CV-445-JDP, 2021 WL 805570, at *4 (W.D. Wis. Mar. 3, 2021); *Corey Z. v. Saul*, 18 CV 50219, 2019 WL 6327427, at *8 (N.D. Ill. Nov. 26, 2019); *Roxanne R. v. Berryhill*, No. 18 C 5484, 2019 WL 2502033, at *6 n.6 (N.D. Ill. June 17, 2019); *Buffolino v. Colvin*, 12 CV 50245, 2015 WL 1285277, at *6 (N.D. Ill. 2015).

A. **The Medical Expert Testimony**

In June of 2018, Plaintiff underwent a psychological consultative examination by Dr. Peggau. R. 821. One of Dr. Peggau's conclusions was that Plaintiff "may have some depression or PTSD but she may have been embellishing her impairment as well." R. 823. When the ALJ asked Dr. Lace, the licensed psychologist who testified at the hearing, about Plaintiff's significant psychological conditions, he discussed some of the references to depression, anxiety, and post-traumatic stress disorder, and he also noted the reference in Dr. Peggau's consultative examination report that Plaintiff "may be embellishing her mental health conditions." R. 45. Later, Dr. Lace mentioned it two more times. *See* R. 46 ("There is a lot -- as mentioned earlier, some reference to full embellishing of symptoms. . ."); R. 47 ("The [consultative examination] from mid-2018 would support some moderate limitations, although much of that appears to be based on -- largely on self-report. And then there's the issue of may be exaggerating symptoms."). The ALJ then discussed this in her decision: "[T]he psychological expert reported that the 2018 examination supported that the claimant has some moderate limitations but there was much reliance on self-reports and possible exaggeration." R. 28.

Plaintiff argues that the ALJ should not have relied on the opinions of Dr. Lace because they were flawed. Specifically, she claims that Dr. Lace testified that there was "a lot" of references to Plaintiff embellishing. It was error for the ALJ to rely on this testimony, Plaintiff argues, because it was not supported by substantial evidence. There was only one notation in the record to embellishing and that was from the consultative examiner Dr. Peggau. Additionally, Plaintiff argues that it was improper for Dr. Lace to rely on a one-time consultative examiner to evaluate her subjective complaints over her counselor who saw her on a regular basis. Pl.'s Br. at 14, Dkt. 19; Pl.'s Reply at 2, Dkt. 25. The Commissioner responds that Plaintiff does not accurately

4

represent Dr. Lace's testimony. The Commissioner asserts that Dr. Lace never represented that there were "a lot" of references to embellishment but, rather, started to say so and then corrected himself, which does not show error. Further, the Commissioner argues that Plaintiff fails to show error in Dr. Lace's opinion such that the ALJ was unreasonable in relying on it. Def.'s Resp. at 5-6, Dkt. 24.

The Court agrees with the Commissioner that Plaintiff misstates Dr. Lace's testimony. Although Plaintiff contends that Dr. Lace testified that there was "a lot" of embellishing, it is clear from the record that Dr. Lace began his sentence with those words and then corrected himself to say that there was "some" reference to embellishing. *See* R. 46. Additionally, as shown above, Dr. Lace referenced the embellishment/exaggeration on two more occasions during his testimony, and each reference included a qualification about its moderate likelihood. *See* R. 45 ("may be embellishing"); R. 47 ("may be exaggerating"). Moreover, although Plaintiff complains about Dr. Lace's initial misstatement, she does not show that the ALJ misconstrued his testimony or that the testimony was not supported by the record. As set forth above, Dr. Lace was correct that there was "some" reference to embellishing in the record. Further, in the ALJ's discussion of Dr. Lace's testimony, she referred to it as "*possible* exaggeration." *See* R. 28 (emphasis added). As such, the Court finds that this argument does not support a finding that the ALJ's reliance on Dr. Lace's testimony was error.

Moreover, contrary to Plaintiff's argument, Dr. Lace did not rely exclusively on Dr. Peggau's opinion in formulating his own opinions. Dr. Lace cited many pieces of evidence that he took into consideration when assessing Plaintiff's conditions, including the letter from Plaintiff's counselor, R. 852, an RFC statement filled out by another mental health treatment provider, R. 1423-25, Plaintiff's earlier consultative examination report, R. 577-80, and notations of normal

5

mood and affect, R. 672, 1262, 1269. For these reasons, the Court cannot conclude that the ALJ erred in relying on Dr. Lace's testimony.

### B. Paragraph A criteria

As part of the listing analysis, the ALJ considered whether Plaintiff met the criteria of Listings 12.04 (Depressive, bipolar and related disorders), 12.06 (Anxiety and obsessive-compulsive disorders), and 12.15 (Trauma- and stressor-related disorders). *See* 20 C.F.R. pt. 404, subpt. P, App. 1, §§ 12.04, 12.06, 12.15. These Listings of mental impairments consist of three sets of "criteria" – the paragraph A criteria,[4] paragraph B criteria,[5] and paragraph C criteria.[6] To be presumptively disabling, a claimant's impairment must satisfy the paragraph A criteria and either the paragraph B or paragraph C criteria of that listing.

Here, the ALJ skipped right to the question of whether Plaintiff met the criteria in paragraphs B and C, without specifically considering whether paragraph A was satisfied. She concluded that the evidence failed to establish the presence of either paragraph B or C criteria. R. 17-18. Plaintiff argues that the ALJ's listing analysis was inadequate because she did not discuss the facts consistent with the paragraph A criteria of Listings 12.04, 12.06, and 12.15. Pl.'s Br. at 12, Dkt. 19; Pl.'s Reply at 1, Dkt. 25. Plaintiff asserts that, given that the paragraph B criteria analysis was flawed (which she argues later in the opening brief), the ALJ's error with respect to the paragraph A analysis is not harmless. Pl.'s Br. at 12, Dkt. 19. The Commissioner argues that,

---

[4] The paragraph A criteria consists of a set of medical findings specific to the mental disorder covered by the listing. As such, each listing contains different criteria under paragraph A.
[5] For all three listings, the paragraph B criteria are the same. To meet the listing criteria for paragraph B, a claimant must have at least two "marked" limitations or one "extreme" limitation of the four listed areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.
[6] The paragraph C criteria, which are also identical across the three listings at issue, requires a medically documented history of the disorder over a period of at least 2 years, along with evidence of ongoing treatment/therapy that diminishes symptoms and signs of the mental disorder and minimal capacity to adapt to changes in environment or demands not already part of a claimant's daily life.

because the ALJ found Plaintiff did not meet the paragraph B or C criteria, it did not matter whether she met the medical criteria in paragraph A of those listings. The Commissioner also contends that the ALJ's paragraph B analysis was not flawed but that, rather, Plaintiff merely disagrees with the ALJ's weighing of the evidence. Def.'s Resp. at 4, Dkt. 24.

The Court agrees with the Commissioner that the ALJ's failure to specifically analyze the Paragraph A criteria does not warrant remand where the ALJ analyzed the paragraph B and C criteria and found that they were not met. Given that Plaintiff needed to satisfy either paragraph B or C in order to meet any of the above listings and that the ALJ found that Plaintiff did not meet the criteria of either, it would not have been possible for Plaintiff to meet the listing even if she had satisfied the paragraph A criteria. Other courts in this circuit have come to similar conclusions. *See Patterson v. Colvin*, No. 1:14-CV-00468-SEB, 2015 WL 898186, at *9 (S.D. Ind. Mar. 2, 2015) ("By extensively discussing the paragraph B and C criteria, the ALJ provided more than a 'perfunctory' analysis of Listing 12.03, such that his failure to mention the Listing by name was not fatal to his opinion."); *Deerwester v. Colvin*, No. 13 C 0218, 2014 WL 8137246, at *10 (N.D. Ill. Mar. 12, 2014) (finding that the ALJ's failure to specifically address paragraph A did not warrant remand where it was presumed that the ALJ found paragraph A satisfied and moved on to the criteria of paragraphs B and C); *Herron v. Comm'r of Soc. Sec.*, 788 F. Supp. 2d 809 (N.D. Ind. 2011) (same). Therefore, the Court cannot conclude that the ALJ's decision to omit an analysis of the paragraph A criteria on this record was error.

Plaintiff argues that the ALJ's failure to analyze the paragraph A criteria is not harmless error because the analysis of the B criteria was not supported by substantial evidence. Although Plaintiff's opening brief contains an argument that the ALJ's assessment of the paragraph B criteria was not supported by substantial evidence, the Commissioner refutes the claims in her response

7

brief. Specifically, the Commissioner points to the fact that the ALJ's paragraph B assessment was supported by the opinion of the testifying medical expert, Dr. Lace. The Commissioner also discussed the various pieces of evidence that the ALJ relied upon to support her paragraph B conclusions, such as the inconsistencies between Plaintiff's testimony and the record evidence. For example, the ALJ discussed Plaintiff's ability to get along with others and spend time with friends and family despite her alleged difficulty engaging in social activities and her ability to handle her own self-care and take care of her children despite her reports that she could not handle basic life activities. Plaintiff did not respond to the Commissioner's arguments with respect to the paragraph B analysis in her two-page reply brief.[7] As a result, the Court deems Plaintiff's argument that the paragraph B analysis was flawed waived. *See Bonte*, 624 F.3d at 466 ("[Plaintiff's] failure to respond to [Defendant's] arguments leads us also to conclude that they have waived [that] argument."); *see also Ole W. v. Kijakazi*, No. 3:21-CV-50032, 2022 WL 2237142, at *3 (N.D. Ill. June 22, 2022).

C. **Caring for autistic child**

One of the more prevalent topics throughout the record and in the hearing was Plaintiff's role as a caretaker of her child with autism. In May 2018, Plaintiff was seen for headaches she had been experiencing for years. R. 1181. During that appointment, Plaintiff reported that the main cause of her headaches was her youngest son, "who is autistic and very active." *Id*. She stated that she has to watch him constantly and that, because they do not have family in the area, she goes back and forth to family in Michigan to get help. *Id*. At an appointment in September 2018,

---

[7] While Plaintiff reiterated in her reply brief her argument that Dr. Lace's testimony was flawed due to his reliance on Dr. Peggau's report of possible embellishment, she does not address Dr. Lace's testimony with respect to the paragraph B criteria or otherwise refute the Commissioner's arguments with respect to the ALJ's paragraph B analysis. Moreover, as set forth above, this Court is not convinced that Dr. Lace's testimony as a whole is flawed.

8

Plaintiff reported that she cares for her child with autism and that he had been "giving her a hard time during the day and during the night." R. 944. At a neurology appointment in December 2018, Plaintiff stated that she was "exhausted due to taking care of her child who is autistic." R. 1213. The following week, at an appointment at Rosecrance, Plaintiff shared that she was continuing to have difficulty managing her child who is autistic. R. 1342. In April 2019, Plaintiff was seen at the emergency department for headaches and dizziness, and her husband reported that Plaintiff was under a lot of stress due to taking care of their autistic child. R. 997. At an appointment in January 2020, Plaintiff reported stress due to caring for her child with autism. R. 1451. Later that month, at an appointment at Rosecrance, Plaintiff shared that she deals with a lot of stress because of her son who is autistic and that her oldest son had to stop attending college in order to stay home and help her. R. 1511. During another appointment at Rosecrance in February 2020, Plaintiff reported that it can be very hard to take care of her son because he is autistic. R. 1513.

During the hearing, Plaintiff was asked about her caretaking. She confirmed that her stress was mostly due to her youngest son who is autistic but stated that she takes care of him only a little bit. R. 52, 55. Specifically, she reported helping him with homework for five to ten minutes, sleeping with him, reading stories to him, and sometimes feeding him. R. 55, 61. She shared that her husband does most of the work for their son and gets up at night with him. R. 55. She also shared that her older son and daughter help care for the youngest child, including giving him baths, changing his clothes, and feeding him. R. 61.

In her written decision, the ALJ found Plaintiff's subjective symptoms "significantly inconsistent" with the record evidence. The "most significant" inconsistency that the ALJ relied on was Plaintiff's care for her autistic child:

> Most significant is the claimant's contention under oath that she did not provide much care to her autistic son, when the records contradict this including the most

> recent Rosecrance records. The records overwhelmingly indicate that the claimant was in fact her son's primary caregiver. Actually, as mentioned above, it appears that the claimant complained that many of her symptoms were related to the stress she feels in caring for her autistic son. . . Though the claimant might receive assistance in the caretaking responsibilities of her young son, the claimant's bald claim that she does not take care of her youngest son that much is extremely disingenuous.

R. 25 (internal citations omitted).

Plaintiff argues that the record evidence does not support that she did many activities to take care of her autistic son. Plaintiff states that the record reflects that she relied on her older son to help with her youngest son and traveled to Michigan to have family help as well. Pl.'s Br. at 19, Dkt. 19. The Commissioner responds that the ALJ reasonably concluded that Plaintiff's testimony was inconsistent with the record evidence. Def.'s Resp. at 10, Dkt. 24.

An ALJ must justify her evaluation of a plaintiff's subjective allegations with "specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013). "Because the ALJ is in the best position to determine a witness's truthfulness," an ALJ's assessment should not be overturned "unless it is patently wrong." *Morrison v. Saul*, 806 F. App'x 469, 474 (7th Cir. 2020) (unpublished) (citing *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012)). An ALJ's assessment is patently wrong if the decision lacks any explanation or support. *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017).

Having reviewed the record, hearing transcript, and ALJ's decision, the Court finds that the ALJ justified her conclusion about Plaintiff's role as her son's caretaker with specific reasons supported by the record. As such, the Court cannot find that the ALJ's conclusion was patently wrong and, therefore, cannot overturn the ALJ's assessment. Remand is not warranted on this basis.

### IV. Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment is denied, the Commissioner's motion is granted, and the ALJ's decision is affirmed.

Date: July 20, 2022　　　　　　　　　　By:　_____
　　　　　　　　　　　　　　　　　　　　　　Lisa A. Jensen
　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge